**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHRISTOPHER ANTON ORTEGA,

        Plaintiff,

v.                                        CIV 18-1026 KBM

ANDREW M. SAUL,[1]
Commissioner of Social
Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (*Doc. 20*), filed May 15, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4*; *7*; *11.* Having considered the record, submissions of counsel, and the relevant law, the Court finds Plaintiff's motion is well-taken in part and will be granted.

### I.    Procedural History

On January 6, 2015, Christopher Anton Ortega ("Plaintiff") filed an application with the Social Security Administration for supplemental security income ("SSI") under Title XVI of the Social Security Act. Administrative Record[2] (AR) at 237. Plaintiff alleged

---

[1] Andrew Saul was confirmed as Commissioner of Social Security on June 17, 2019, and he is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Document 15-1 contains the sealed Administrative Record. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

a disability onset date of October 31, 2014. AR at 237. Disability Determination Services ("DDS") determined that Plaintiff was not disabled both initially (AR at 89, 95) and on reconsideration (AR at 97, 106). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his applications. AR at 128.

On May 31, 2017, ALJ Cole Gerstner held a hearing at which Plaintiff and a vocational expert ("VE") testified. *See* AR at 37-78. The ALJ issued an unfavorable decision on December 15, 2017. AR at 28. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council, which the Council denied on September 19, 2018. AR at 7. Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of the claimant's residual functional capacity ("RFC"), he is unable to perform his past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

Here, at Step One of the process, the ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity ('SGA') since January 2, 2015, the application date." AR at 22 (citing 20 C.F.R. §§ 416.971-976). At Step Two, he concluded that Plaintiff had the following severe impairments: "gastrointestinal disorders secondary to pancreatitis, peripheral neuropathy, and cardiac arrhythmias with pacemaker." AR at 22 (citing 20 C.F.R. § 416.920(c)). The ALJ indicated that Plaintiff's mental impairments of depression and alcoholism in remission were non-severe, as they did "not cause more than minimal limitation in [his] ability to perform basic mental work activities." AR at 22.

At Step Three, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 23 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). At Step Four, he found that while Plaintiff's

"medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 26. Considering the evidence of record, he found as follows:

> [Plaintiff] has the [RFC] to occasionally lift 20 pounds and . . . frequently lift or carry up to 10 pounds. The claimant is able to stand and walk for approximately four hours in an eight-hour workday and sit for six hours in an eight-hour workday. He can occasionally operate foot controls with each foot. He can occasionally balance, stoop, kneel, crouch, crawl and climb ladders, ropes, scaffolds[,] ramps or stairs. He can occasionally work around unprotected heights and moving mechanical parts. The claimant is limited to simple, routine tasks. I find that this is a limited range of work contained in the sedentary exertional level as defined by 20 [C.F.R. §] . . . 416.967 and SSR 83-10.

AR at 23. The ALJ went on to find that Plaintiff was "unable to perform any past relevant work." AR at 27 (citing 20 C.F.R. § 416.965). But at Step Five, he found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [he] can perform." AR at 27 (citing 20 C.F.R. §§ 416.969, 416.969(a)). More particularly, the ALJ found Plaintiff able to perform the positions of Callout Operator (DOT Code 237.360-014), Addresser (DOT Code 209.587-010), and Food Clerk (DOT Code 209.567-014). Consequently, the ALJ determined that Plaintiff had not been under a disability from January 2, 2015, through the date of his application. AR at 28 (citing 20 C.F.R. § 416.920(g)).

## III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Plaintiff argues that the ALJ failed to properly include all of his limitations in the RFC and that he committed additional errors at Step Five of his evaluation. More

specifically, he contends that the ALJ improperly assessed the effects of his peripheral neuropathy and pancreatitis, improperly rejected Dr. Bocian's opinions and disregarded certain of Dr. Quinlan's opinions, improperly assessed Plaintiff's subjective symptoms, and failed to clarify inconsistent vocational testimony regarding the jobs that Plaintiff could perform and his RFC finding. *Doc. 20* at 10-22.

### A. The ALJ properly assessed the effects of Plaintiff's peripheral neuropathy.

At the May 31, 2017 hearing before the ALJ, Plaintiff identified neuropathy in feet as his most significant problem. AR at 49. He explained that he began experiencing pain, numbness, and tingling in his feet while he was hospitalized in 2015. AR at 534-35. He testified that, because of the neuropathy, he was only able to walk for 15-20 minutes and stand for 30-45 minutes at a time. AR at 49. Yet, the ALJ determined that Plaintiff was able to stand and walk for approximately four hours in an eight-hour workday and to occasionally operate foot controls with each foot. AR at 23. Plaintiff maintains that such a finding was error.

The ALJ described Plaintiff's neuropathy as "somewhat ambiguous," concluding that the "functional limitations described by [Plaintiff were] not supported." AR at 26. He noted that Pamela Black, M.D. of Quadra Health Institute had attributed Plaintiff's neuropathy to excessive alcohol use but had not offered a prognosis or discussed a cure. AR at 26. According to the ALJ, there was "reason to think [the neuropathy] may improve with continued abstinence from alcohol," but that, regardless, the pain was "described as mild, particularly in response to gabapentin." AR at 26. The ALJ emphasized that Plaintiff's "gait is normal without need for an assistive device" and was "not consistent with disability." AR at 26. The ALJ noted that Plaintiff's condition allowed

him to "coach[] his son's football team in January 2016, run[] a Lobo's training camp in June[,] and coach[] basketball in 2017." AR at 26 (citing AR at 676, 698, 805). According to the ALJ these activities by Plaintiff "prove a great deal of exertional ability." AR at 26. Although the ALJ determined that "the neuropathy [was] not . . . intense," he acknowledged that there was "a formal diagnosis and [that] pharmaceutical treatment continue[d]." AR at 26. As such, he limited Plaintiff to "four hours of standing/walking in a workday." AR at 26.

But Plaintiff contends that the ALJ "omitted multiple references to [his] consistent reports of foot pain" and "mischaracterized parts of the record" in which he described his food pain as "mild." *Doc. 20* at 11. He highlights a January 2017 treatment note from Dr. Black. According to Plaintiff, this record shows that "pain . . . associated with neuropathy, was stabbing[,] mild, and interferes with his activity (7/10) and sleep (10/10)." *Doc. 20* at 11 (citing AR at 824). However, the Court's own review of this record reveals something a bit different. Instead, Dr. Black reported the severity of Plaintiff's foot pain as "mild and gradual onset" and indicated that it "occurs occasionally . . . for brief period[s]" and interferes with both his activity and his sleep at a "7" on a scale of 0-10, with 10 being pain that completely prevents the activity. AR at 824. Further, the record indicates that Plaintiff's prescription medications controlled his foot pain and improved his function. AR at 824. The record does suggest, as Plaintiff asserts, that the foot pain "is worsened by standing and walking." AR at 824.

Plaintiff questions Dr. Black's January 2017 assessment of "mild 1-4" foot pain, explaining that she gave this same characterization of his pain in almost every treatment note. *Doc. 20* at 11. Plaintiff describes Dr. Black's assessment as

"inconsistent with [his] own description of how his pain interfered with his daily activities and his sleep, and his need for prescriptions for pain relieving medication." *Id.* at 11-12 (citing AR at 917-25). Despite the contents of Dr. Black's records, Plaintiff submits that "taken in context, [his] pain is not 'mild.'" *Id.* at 12.

Plaintiff further maintains that certain medical evidence "contradicts the ALJ's assertion that [Plaintiff's] pain was 'mild' and 'ambiguous.'" *Id.* For example, he notes that Antoine Jakiche, M.D., his gastroenterologist, noted in April 2015 that he "still has tingling and pain in his feet" and was "using a cane instead of the walker." *Id.* (citing AR at 634). Plaintiff refers to Robert Gardner, M.D.'s June 2015 record, which indicated that the numbness, tingling, and burning in his feet had caused a gait disturbance. *Id.* (citing AR at 608-10). Finally, he notes that in February 2016 Ronald Sautter, M.D. observed a slightly decreased sensation around his feet and noted that his physical therapy "does not seem to help that much." *Id.* (citing AR at 898). Plaintiff maintains that the medical evidence from Drs. Jakiche, Gardner, and Sautter "render the RFC finding of an ability to stand and walk for four hours per day and the ability to operate foot controls unsupported by substantial evidence." *Id.* (citing AR at 49). The Court disagrees.

The Commissioner submits that while the ALJ found that Plaintiff could stand and walk for four hours in a workday, he effectively modified that finding by setting Plaintiff's level of work at "sedentary." *Doc. 24* at 8 (citing AR at 23). Pursuant to Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983), sedentary work generally requires up to two hours of standing and walking. At the hearing, the ALJ gave the VE a hypothetical involving an individual who could sit for six hours, stand and walk for four hours, occasionally operate foot controls, occasionally use ramps, stairs, ladders, ropes,

and scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and occasionally work at unprotected heights and with mechanical parts. AR at 75. Given this hypothetical, the VE indicated that the available jobs would be "reduced to sedentary," and she opined that the hypothetical individual could work as a call-out operator, addresser, a food and beverage order clerk, and a surveillance systems monitor. AR at 76-77. Next the ALJ asked whether limiting the hypothetical individual to two hours of standing and walking or making "the entire hypothetical strictly sedentary" would have any impact on the VE's answer. AR at 77. The VE responded, "No, it – would not have changed my answer at all." AR at 77.

Given that the ALJ effectively limited Plaintiff's exertional level to "sedentary," any argument by Plaintiff that he could not stand and walk for four hours, as opposed to two, is unpersuasive. Further, despite Plaintiff's insistence that his foot pain was more severe than the medical records document, the Court finds that the ALJ correctly characterized the medical records. The records constitute substantial evidence for the ALJ's finding that Plaintiff's foot pain was "mild" and responsive to Gabapentin. *See, e.g.,* AR at 910, 913, 917, 923, 932-33, 935-36, 938-39, 941-42, 944, 950, 956. Notably, the medical records highlighted by Plaintiff were largely from a period in time closer to his 2014-2015 hospitalization for renal failure and alcohol withdrawal. *Compare* AR at 608-634 (records from 2015) *with* AR at 91 (noting that Plaintiff was hospitalized Dec. 7, 2014 and transferred to rehab on Jan. 7, 2015). As the ALJ noted, there was "reason to think [Plaintiff's peripheral neuropathy] may improve with continued abstinence from alcohol." *See* AR at 26.

In short, the Court finds ample support in the medical record for the ALJ's determination that Plaintiff's peripheral neuropathy did not preclude sedentary work. The Court declines Plaintiff's invitation to reweigh the evidence. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

**B.      The ALJ properly assessed the limiting effects of Plaintiff's pancreatitis.**

Plaintiff was diagnosed with pancreatitis during his 2014-2015 hospitalization. AR at 377. Plaintiff testified at his hearing before the ALJ that, despite his abstinence from alcohol, he continued to suffer from pancreatitis. AR at 68-69. He estimated that he had 20-25 flare-ups per month with each one lasting five to ten minutes. AR at 55. He defined a flare-up as the enlargement of his pancreas, which caused a stabbing sensation and interrupted whatever activity he was doing at the time. AR at 55. At the time of the hearing, Plaintiff continued to receive treatment from his gastroenterologist, Dr. Jakiche, on an annual basis. *See* AR at 68-69. Plaintiff notes that Dr. Jakiche observed abdominal pain as well as CT scans showing three pancreatic cysts. *Doc. 20* at 13 (citing AR 623-24).

In his decision, the ALJ noted that a CT scan showed a cystic structure on the pancreas but that the Plaintiff never followed up with labs ordered by Dr. Jakiche. AR at 25 (citing AR at 588, 644). He also mentioned Dr. Jakiche's observations of moderate tenderness at the upper-left quadrant of the abdomen without signs of malabsorption. AR at 25 (citing AR at 646). Plaintiff submits that the extent of the ALJ's analysis of his pancreatitis was "one sentence" indicating that "'abdominal pain was also described in mild terms and features less in the record as time goes by.'" *Doc. 20* at 13 (quoting AR

at 26). He suggests that the ALJ "ignored . . . consistent, longitudinal evidence of [his] pancreatitis and failed to include the resulting limitations on his functional capacity." *Id.*

As he did with his foot pain, Plaintiff highlights various medical records in an attempt to demonstrate that his pancreatic pain was not mild or limited. He notes the following observations from Dr. Jakiche's treatment notes: in June 2015, moderate tenderness in the left upper quadrant of Plaintiff's abdomen and mild tenderness at the epigastrium and lower left quadrant; in January 2016, constant pain in the left upper quadrant of his abdomen that was worse with greasy food; and in February 2017, moderate tenderness in the left upper quadrant of his abdomen. *Id.* at 13 (citing AR at 641, 644, 646). Additionally, Plaintiff referred to treatment notes from Drs. Black and Gardner in which they observed that his abdominal pain fluctuates in severity and can, at times, be 10/10. *Id.* at 14 (citing AR at 601, 608, 953, 956).

The Commissioner, in contrast, maintains that the ALJ reasonably adopted an RFC that accounted for Plaintiff's symptoms from pancreatitis. *Doc. 24* at 9. He insists that "the medical records document mild abdominal pain well-controlled with medication." *Id.* at 10 (citing AR at 910, 913, 917, 923, 932-33, 935-36, 938-39, 941-42, 944, 950, 956).  The Court's review of the medical record comports with the Commissioner's contention and with the ALJ's findings. *See, e.g.*, AR at 913 (pain while eating, but mild in severity); AR at 917 (mild abdominal pain in the lower left quadrant worsened by bending and driving but relieved by rest, changing positions, medications and diet); AR at 923 (stabbing/shooting abdominal pain interferes with sleep but medication helps; pain level 3/10); AR at 941 (pain aching in nature and mild in severity); AR at 944 (pain in lower left quadrant, stabbing in nature with mild severity;

relieved by medication); AR at 956 (abdominal pain sometimes 0 and sometimes 10/10). While Dr. Black's pain management records do document *moderate* abdominal pain on a few occasions in October and November of 2015, *see, e.g.*, AR at 950, 953, Plaintiff's abdominal pain is described as mild throughout the balance of these records. A few 2015 records suggesting moderate abdominal pain simply do not overwhelm the evidence indicating that Plaintiff's pain was mild and improving as he maintained sobriety. There is substantial evidence to support the ALJ's determination that Plaintiff's pancreatitis does not preclude sedentary work.

Plaintiff also contends that the ALJ's limitation to "simple, routine tasks" failed to adequately account for his pancreatic flare ups, when he must cease working as he waits for the pain to subside. *Doc. 20* at 14. Plaintiff contends that this symptom of his pancreatitis undermines his ability to work at a consistent pace at an unskilled job. *Id.* Although a claimant must be able to "perform at a consistent pace without an unreasonable number and length of rest periods," Plaintiff has simply not referred the Court to any authority suggesting that even a *daily*[3] break of 5-10 minutes during pancreatic flare-up would be deemed unreasonable or inconsistent with simple, routine work. As such, the Court will not grant Plaintiff's motion on this ground.

## C.  The ALJ properly considered the state consultants' opinions regarding physical limitations.

Next, Plaintiff contends that the ALJ did not offer a sufficiently specific reason to reject the opinion of Edward S. Bocian, M.D. *Doc. 20* at 15. Dr. Bocian reviewed Plaintiff's medical records and concluded, in March 2015, that all of his impairments

---

[3] Plaintiff testified that he experiences 20-25 flare-ups in a given month. AR at 55. Based upon this estimate, his flare-ups take place on a less-than-daily basis.

were "expected to be nonsevere within 12 months of onset." AR at 91-92. The ALJ

discredited Dr. Bocian's opinion because, in his view, Dr. Bocian "did not take a

longitudinal perspective on the claimant's condition." AR at 26. Significantly, the ALJ

found that Plaintiff had *greater* limitations than those found by Dr. Bocian. *See* AR at 26.

Indeed, he found limitations from multiple *severe* impairments, including gastrointestinal

disorders secondary to pancreatitis, peripheral neuropathy, and cardiac arrhythmias

with pacemaker. AR at 22. Any error in his rejection of Dr. Bocian's opinion does not

work in Plaintiff's favor. *See Keyes-Zachary*, 695 F.3d at 1162-63 (concluding the ALJ's

alleged error assessing a psychologist's opinion did not prejudice the claimant, because

"giving greater weight to [the doctor's] opinion would not have helped her")

Next Plaintiff argues that while the ALJ purported to give "significant weight" to

the opinion of James Quinlan, M.D., he failed to account for certain of his opined

limitations, including the prohibition against climbing ladders, ropes, and scaffolds, and

avoiding all exposure to hazards. *Doc. 20* at 15. Plaintiff insists that it was "legal error"

for the ALJ not to explain why he rejected these limitations. *Id.* at 16 (citing *Haga v.

Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007)). Plaintiff is correct that the ALJ neither

adopted nor discussed these specific limitations by Dr. Quinlan. *See* AR at 23

(concluding that Plaintiff could "*occasionally* . . . climb ladders, ropes, scaffolds[,] ramps

or stairs" and could "*occasionally* work around unprotected heights and moving

mechanical parts") (emphasis added). But, as the Commissioner points out, all of the

jobs identified by the VE were at a sedentary exertional level, and activities such as

climbing ladders, ropes, or scaffolds are generally not required for sedentary work. *See*

SSR 96-9p, 1996 WL 374185, *7 (July 2, 1996) ("Postural limitations or restrictions

related to such activities as climbing ladders, ropes, or scaffolds, . . . would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.") Moreover, contact with "moving mechanical parts" and "high, exposed places" is "unusual" in unskilled sedentary work, and "[e]ven a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base." *Id.* at *9. Further, there is no indication in the descriptions of the identified unskilled sedentary jobs within the Department of Labor's Dictionary of Occupational Titles ("DOT") that any of the jobs would require climbing ladders, ropes, or scaffolds or involve exposure to hazards. *See* DOT 237.367-014 (call out operator); DOT 209.587-010 (addresser); DOT 209.567-014 (food clerk). Under the circumstances, where the VE specified that she was only identifying jobs at the sedentary level, any error by the ALJ in failing to incorporate into the RFC Dr. Quinlan's limitations on climbing ladders, ropes, and scaffolds and avoiding exposure to hazards was harmless. *See Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) (concluding that it was unnecessary to determine whether the ALJ should have included certain limitations, because "the capacity required to do the jobs identified by the ALJ is not contrary to [those] limitations; thus, any error was harmless")

Additionally, Plaintiff argues that the ALJ effectively ignored many of Plaintiff's functional limitations, because the "reconsideration opinion only encompassed medical records through October 2015." *Doc. 20* at 16. As to those arguments that Plaintiff has sufficiently developed – his argument that the ALJ failed to account for functional limitations associated with his peripheral neuropathy and his pancreatitis – the Court is satisfied, as noted above, that substantial evidence supports the ALJ's findings. Plaintiff

does not say which additional functional limitations the ALJ should have included to properly account for his heart condition and has, thus, failed to sufficiently develop this argument. *See id.* (merely noting that Plaintiff had not yet had his pacemaker implanted at the time Dr. Quinlan offered his opinions, concluding that, as a result, the consulting doctor could not opine on limitations related to his heart condition).

### D. The ALJ properly assessed Plaintiff's subjective complaints.

Plaintiff identified neuropathy in both feet as his most significant problem, causing pain so severe that he could walk only 15 to 20 minutes or stand 30 to 45 minutes. AR at 49. Additionally, he described 20-25 pancreatitis flare-ups per month, which caused a stabbing sensation and interrupted any activity in which he was engaged. AR at 55. He indicated that if the flare-ups were his only problem, he would still only be able to work part-time at most. AR at 55.

In determining an RFC, an ALJ must consider the entire record, including the claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). Here, ALJ Gerstner determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 26. Plaintiff maintains that in reaching this conclusion, the ALJ failed to correctly assess his subjective complaints. *Doc. 20* at 16-17. The Commissioner, in contrast, insists that the ALJ properly accounted for medical evidence and activities, which he submits conflict with Plaintiff's testimony regarding debilitating pain in his abdomen and feet. *Doc. 24* at 13.

Pursuant to 20 C.F.R. § 416.929(c)(4), an ALJ is tasked with determining whether there are conflicts between a claimant's statements and the balance of the

15

evidence. Here, the ALJ found such conflicts to exist. Indeed, he determined that "the functional limitations described by [Plaintiff were] not supported." AR at 26. Once again, the ALJ explained that the medical records revealed abdominal and foot pain that were characterized as only "mild" and responsive to medication. AR at 26. He also explained that Plaintiff's activities, as reported to his medical providers, suggested "a great deal of exertional ability." AR at 26. These activities included coaching his son's football team, running a Lobo training camp, and coaching basketball. AR at 26. The level of activity required for these activities was, according to the ALJ, simply incongruent with the limitations Plaintiff described. AR at 26.

Plaintiff submits that the ALJ did not have adequate information about Plaintiff's activities. *Doc. 20* at 17. He argues that the ALJ "fail[ed] to consider the context . . . [or] the exertion (or potential lack of exertion) required in coaching an 8-year old's sports games." *Id.* Yet, it is within common knowledge that running training camps and coaching kids' sports *do* require a level of exertion beyond the limitations claimed by Plaintiff. Simply put, it was reasonable for the ALJ to conclude that Plaintiff's performance of these activities, together with medical records describing only mild pain and regular exercise, undermine Plaintiff's subjective complaints.

Relying upon *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004), Plaintiff argues that the reports of pain and prescription refills found in his medical record are at odds with the ALJ's determination that Plaintiff's subjective complaints were unsupported. The Court disagrees and finds some discussion of the *Hamlin* court's analysis is warranted.

In *Hamlin*, the Tenth Circuit determined that the ALJ failed to properly consider the claimant's allegations of disabling pain in determining his RFC. *Id.* at 1220. The court reasoned that the ALJ's credibility determination – that the claimant's pain testimony was only credible to the extent it was consistent with an RFC for medium work – was unsupported by substantial evidence and, in fact, contrary to the evidence of record. *Id.* The court took issue with the ALJ's rationale that watching television was an activity that required "significant attention and concentration . . . inconsistent with severe and intractable pain," noting that there was no medical support for such an opinion. *Id.* at 1221. The court also criticized the ALJ for relying on minor discrepancies in the claimant's testimony and for discounting his subjective complaints on the basis that he did not use an assistive device for his neck, when there was no indication that a medical doctor had suggested such a device might provide relief from pain. *Id.* at 1221. Additionally, the court noted that the claimant's medical records were "replete with his reports of pain and of prescriptions and refills for medication," which it determined supported his subjective complaints of disabling pain. *Id.* at 1221-22. In short, the Court found that the claimant's subjective complaints of pain had adequate support in the record, where the ALJ's conclusions did not. The *Hamlin* court found numerous issues with the ALJ's analysis of the claimant's limitations and, ultimately, no substantial evidence to support the analysis. It did not, however, hold that medical records' references to a claimant's pain and prescription refills preclude an ALJ from reaching the conclusion that a claimant's complaints of disabling pain are unsupported.

Here, the ALJ's determination that Plaintiff's statements concerning the limiting effect of his symptoms were not entirely consistent with the record was a reasonable one supported by substantial evidence. The Court will not remand on this ground.

E. **The Court will remand for the ALJ to address an apparent conflict between the VE's testimony and the DOT.**

Plaintiff alleges that the ALJ committed two separate Step-Five errors. First, he argues that the ALJ erred in relying on the vocational testimony because his RFC neglected to include all limitations supported by the evidence. *Doc. 20* at 18-19. But the Court determined herein that the ALJ did not commit reversible error in reaching his RFC determination. It follows that Plaintiff's allegation of a Step-Five error related to omissions in the RFC also fails.

Next, Plaintiff maintains that the ALJ neglected, at Step Five, to resolve a conflict between the VE's testimony and the DOT, which he submits was legal error under SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). *Doc. 20* at 19 (citing AR at 35-78). The ALJ propounded a hypothetical question to the VE, which assumed that an individual could perform simple, routine work with certain additional limitations. AR at 75. The VE concluded that the described individual could perform the jobs of callout operator, addresser, and food clerk. AR at 28, 76. Plaintiff now contends that there is an inconsistency in this testimony in that two of these jobs – the callout operator and the food clerk – require level-three reasoning. *Doc. 20* at 19-20. He submits that *Hackett* dictates that the ALJ's limitation to simple, routine tasks is inconsistent with these level-three reasoning jobs. *Id.* at 20. According to Plaintiff, "[t]he vocational testimony therefore is in direct conflict with the DOT, and ALJ Gerstner did not ask the vocational

witness how her testimony as to the reasoning requirement of identified jobs corresponds with the DOT." *Id.*

The Tenth Circuit has held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). This is an "affirmative responsibility" in which the adjudicator must both "[a]sk the VE . . . if the evidence he or she has provided conflicts with the information provided in the DOT; and [if] the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4.

The Tenth Circuit extended these principles to General Educational Development ("GED") reasoning levels in *Hackett*. GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appx. C, Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016). "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* At issue here is the Reasoning Development division, which has six defined levels, with one representing the lowest level and six representing the highest. *Id.* In *Hackett*, the Tenth Circuit found an apparent conflict between GED level-three reasoning and the simple, routine work restriction. *See Hackett*, 395 F.3d at 1168. More precisely, the court reasoned that the simple, routine work limitation "seems inconsistent with the demands of level-three reasoning." *Id.* at 1176.

A reasoning level of three, such as is required for the jobs of call out operator and food clerk, requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[, and d]eal with problems involving several concrete variables in or from standardized situations." *Id.* (quoting DOT, Vol. II at 1011). Notably, in 2016, the Tenth Circuit reiterated that "a limitation to 'simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning." *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (quoting *Hackett*, 395 F.3d at 1176); *see also Meloy v. Berryhill*, CIV 18-0371 KBM, 2019 WL 1099758, at *18 (D.N.M. Mar. 9, 2019); *Urias v. Berryhill*, CIV 16-1063 KBM, 2017 WL 3025926, at *8 (D.N.M. July 11, 2017).

In an attempt to undermine Plaintiff's reliance on *Hackett*, the Commissioner submits that "the *Hackett* Court did not hold that reasoning level three was necessarily inconsistent with simple and routine work, only that it *appeared* to be." *Doc. 24* at 19 (referencing *Hackett*, 396 F.3d at 1176). He maintains that "the *Hackett* Court did not foreclose the possibility that the ALJ could find on remand that there was no such conflict." *Id.* But Plaintiff's view of *Hackett* is too narrow. *See Paulek*, 662 F. App'x at 594. While the language in *Hackett* may not be strong enough to give rise to a *certain* conflict, there remains, at minimum, an *apparent* conflict about which the ALJ had a duty to inquire.

The Commissioner also attempts to distinguish *Hackett*, arguing that "the vocational expert here specifically testified that there was no conflict with the DOT, and a person limited to simple, routine tasks could perform the occupations of callout operator, addresser, and food clerk." *Doc. 24* at 19 (citing AR at 72-76). But the Court's

review of the exchange between the VE and the ALJ reveals less specificity than the Commissioner suggests.

The ALJ asked the VE whether she could "keep [her] testimony consistent with the DOT and advise [him] if [she] step[ped] outside of that." AR at 73. The VE responded that she could. AR at 73. Thereafter, when answering two of the ALJ's questions, the VE noted that her answer was based on her own experience, not on information within the DOT. AR at 76-77. She did not, however, discuss any apparent conflict between the reasoning requirement of callout operator and food clerk jobs and Plaintiff's limitations. Nor did the ALJ ask the VE whether there was any conflict between the reasoning requirements for the identified jobs and his hypothetical. Instead, the ALJ simply adopted the VE's testimony that the Plaintiff could perform work as a callout operator or a food clerk.

The VE *did* testify that the jobs she identified were "all simple." AR at 76. The Commissioner maintains that "with [her] knowledge of SVP and GED levels and how they are used in the DOT, [she] was in a better position to determine if any conflict existed." *Doc. 24* at 19. To some extent, Plaintiff agrees. Plaintiff maintains that "*the ALJ was required to ask the [vocational] witness about the apparent conflict.*" *Doc. 25* at 6. But because the ALJ did not specifically do so, it is impossible to discern whether the VE observed the apparent conflict and dismissed its import, simply overlooked the conflict, or whether she was wholly unfamiliar with any apparent conflict. Regardless of the reason for the VE's failure to discuss the apparent conflict, the ALJ had an affirmative duty to obtain a reasonable explanation.

The Commissioner also insists that this case is distinguishable from *Hackett* for another reason: unlike the claimant in *Hackett*, the Plaintiff had two years of college education. *Doc. 24* at 19. The Commissioner contends that these two years of college gave Plaintiff the background necessary for reasoning level-three work. *Id.* at 18. The problem for the Commissioner, however, is that the record does not reflect any testimony by the VE, or questioning by the ALJ, regarding the impact of Plaintiff's college instruction on his ability to perform work as a callout operator or a food clerk. Instead, these *post hoc* arguments are offered by the Commissioner without any opportunity by the VE or ALJ to consider them. Simply put, an apparent conflict remains and necessitated further inquiry by the ALJ. *See Meloy*, 2019 WL 1099758, at *18-19 (rejecting the Commissioner's argument that the claimant had the ability to perform identified jobs because she had two years of college, and determining that there remained a "clear conflict" between jobs requiring level three reasoning and the claimant's RFC); *Castillo v. Colvin*, Civ. No. 14-0978 SCY, 2016 WL 4425729, at *13 (D.N.M. Jan. 5, 2016) (concluding that remand was required to allow an ALJ to engage in the analysis of whether a claimant's education justified disregarding the GED reasoning level assigned to a particular job identified by the VE); *see also Urias v. Berryhill*, 2017 WL 3025926, at *10 (reasoning that where the claimant's RFC more closely matched the requirements of GED reasoning level two than level three or above, the ALJ's failure to recognize or address this apparent conflict with the VE constituted harmful error).

Plaintiff further contends that once the jobs of callout operator and food clerk are eliminated, only an obsolete job remains. *Doc. 20* at 21. That is, despite this Court's

rejection of the argument in the past, Plaintiff insists that the job of addresser is obsolete. *Id.* at 20-21. Additionally, he submits that the 8,552 addresser jobs in the national economy is an insufficient number of jobs to meet the *Trimiar* standard. *Id.*

The Commissioner did not address Plaintiff's claim of obsolescence, nor did he argue that 8,552 addresser jobs *does* represent a significant number of jobs in the national economy. The Court will not supply these arguments on his behalf. Rather, it will reverse and remand for further analysis of the apparent conflict between the VE's testimony and the DOT.

## V. Conclusion

The Court finds that the ALJ properly assessed the limiting effects of Plaintiff's peripheral neuropathy and pancreatitis and properly considered the state consultant's opinions regarding his physical limitations.  Moreover, the ALJ adequately evaluated Plaintiff's subjective complaints. The Court will remand, however, because the ALJ failed to address an apparent conflict between the VE's testimony and the DOT.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing (*Doc. 20*), filed May 15, 2019, is **GRANTED.**

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent